**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DEREK JAEGER, and<br>GALINA POLYAKOVA,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS MCLAUGHLIN,<br>NEIL KAPOOR, CORAL DEFI LP,<br>CORAL CAPITAL LLC, and<br>DNA HOLDINGS VENTURE INC.,<br><br>Defendants. | Case No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Derek Jaeger and Galina Polyakova, by and through their undersigned attorneys, for their Complaint against Defendants Thomas McLaughlin, Neil Kapoor, Coral DeFi LP, Coral Capital LLC, and DNA Holdings Venture Inc., allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## INTRODUCTION

1. This is a securities fraud case by the Plaintiffs, who were fraudulently induced into investing $1.5 million into a cryptocurrency fund, against Defendants, seeking to recover damages under the Securities Exchange Act of 1934 (the "Exchange Act") and Delaware common law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa), in that this is a civil action arising under Section 10(b) of the Exchange Act (15 U.S.C. 78j(b)) and SEC Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)), in that a substantial part of the events or omissions giving rise to the fraud or the effects of the fraud occurred in this district.

4. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail and interstate telephone communications.

**PARTIES**

5. Plaintiff Derek Jaeger (Jaeger) is an individual who resides in New York, NY. Jaeger was fraudulently induced into investing $1 million in Coral DeFi LP and suffered damages as a result of the false or misleading statements or material omissions alleged herein.

6. Plaintiff Galina Polyakova (Polyakova) is an individual who resides in New York, NY. Polyakova was fraudulently induced into investing $500,000.00 in Coral DeFi LP and suffered damages as a result of the false or misleading statements or material omissions alleged herein.

7. Upon information and belief, Defendant Thomas McLaughlin (McLaughlin) is an individual who resides in San Juan, PR. McLaughlin was a co-founder of Coral Capital LLC, and later Chief Investment Officer of DNA Holdings Venture Inc.

8. Upon information and belief, Defendant Neil Kapoor (Kapoor) is an individual who resides in San Juan, PR. Kapoor was head of Business Development & Investor Relations at Coral Capital LLC, and later at DNA Holdings Venture Inc.

9. Defendant Coral DeFi LP (Coral DeFi) is a limited partnership formed under the laws of Delaware and does business in San Juan, PR. Coral DeFi is a cryptocurrency fund, focused on decentralized financial applications and investment opportunities.

10. Defendant Coral Capital LLC (Coral Capital) is a limited liability company formed under the laws of Puerto Rico and does business in San Juan, PR. Coral Capital is a venture capital fund that focuses on cryptocurrency. Coral Capital is the General Partner of Coral DeFi.

11. Defendant DNA Holdings Venture Inc. (DNA Holdings) is a for-profit corporation that is incorporated in Puerto Rico and has its principal place of business in San Juan, PR. On or around October 7, 2024, Coral Capital merged with DNA Holdings.

## FACTS

12. In May 2024, during a bachelor party at Casa de Campo Resort in the Dominican Republic, McLaughlin and Kapoor started a conversation with Jaeger about their cryptocurrency investment firm Coral Capital.

13. Jaeger expressly told McLaughlin and Kapoor that he was not a savvy crypto trader, and he simply wanted to beat Bitcoin's returns.

14. McLaughlin and Kapoor, taking advantage of Jaeger's lack of knowledge, began to confidently tell Jaeger that they could easily beat the market.

15. McLaughlin and Kapoor told Jaeger that if he put his money with them, they would certainly "beat the market" by using their three-fund strategy deployment.

16. McLaughlin and Kapoor made representations that Coral Capital's "excellent" past performance would be repeated in the future.

17. On or about June 1, 2024, Kapoor sent a calendar invite for the first formal meeting after the bachelor party.

18. McLaughlin and Kapoor repeated the same promises and guarantees of beating the market that were made at the bachelor party.

19. Four days later, Jaeger created a Telegram group, introducing his partner Polyakova to McLaughlin and Kapoor.

20. That same day, McLaughlin and Kapoor pitched their fund decks, via Google meets, to Jaeger and Polyakova, where they implied again that gains realized in the past would be repeated in the future.

21. The funds that were presented in the decks were, DNA Liquid Token fund (the “Main Fund”), High Yield LP fund (the “High Yield”), and Moonshot LP Fund I (“Moonshot”).

22. Jaeger was promised by McLaughlin that allocation of his investment would be $700,000 in the Main Fund, $200,000 in the High Yield fund, and $100,000 in the Moonshot fund. Polyakova was promised a similar allocation.

23. Relying on all these representations, Jaeger and Polyakova agreed to invest in Coral Capital’s funds.

24. Moreover, Jaeger and Polyakova overlooked the unusually high fees because of the representations made by McLaughlin and Kapoor.

25. Jaeger liquidated $1.2 million in Ethereum to fund this investment because of the guarantees and representations made to him.

26. On July 12, 2024, Jaeger and Polyakova wired $1.5 million in four transactions to Coral Capital, making Plaintiffs one of their biggest investors.

27. In the next several weeks, Coral Capital had difficulties implementing the promised investment, even admitting to “dropping the ball.”

28. Contrary to the representations, McLaughlin unilaterally redirected all $1.5 million to the Main Fund, Coral DeFi LP, never implementing the three-fund strategy discussed. As

evidenced by the fact they never sent any statements of reporting for the High Yield and Moonshot funds.

29. On October 3, 2024, Jaeger asked via Telegram if his investment had been allocated to the three-fund strategy, but neither McLaughlin nor Kapoor answered his question.

30. On October 31, 2024, Coral Capital sent a letter stating that it had decided to merge with DNA Holdings on October 7, 2024, stating the only thing that would change was the name on the performance statement, which would now show "DNA Asset Management."

31. A brief positive performance period occurred in November 2024.

32. However, after witnessing several months of bad performance later, Jaeger formally complained in writing.

33. During those several months, Bitcoin went up by nearly 80%, which McLaughlin and Kapoor expressly represented they would beat.

34. On October 9, 2025, Jaeger and Polyakova requests that fees be waived, but neither McLaughlin, Kapoor, nor the DNA Holdings team ever answered the request.

35. On February 6, 2026, Kapoor suspiciously left the Telegram group.

36. On April 3, 2026, a DNA Holdings team member told Jaeger and Polyakova that DNA Holdings was winding down the funds.

37. McLaughlin later admitted that High Yield was not operational and would need approximately $10 million of capital to function.

38. Upon Information and belief, McLaughlin, Kapoor, Coral DeFi, and Coral Capital, had no intention ever to implement the agreed upon three-fund strategy.

39. To date, Jaeger and Polyakova's investment is down over 50%.

40. To date, Jaeger and Polyakova have received less than half their initial investment.

41. Defendants made false and misleading statements and/or omissions and engaged in a scheme to deceive Plaintiffs into investing into their funds.

42. Defendants acted with scienter since they knew or recklessly disregarded that their statements and omissions were materially false and misleading at the time they were made.

43. As a result of their investment into Defendants' funds, Plaintiffs suffered economic loss under the federal securities laws.

44. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs.

45. The "safe harbor" for forward-looking statements does not apply to any of the false statements described herein, as Defendants failed to adequately label the statements as forward-looking, did not accompany them with meaningful cautionary language that the law requires for the safe harbor to apply, and/or Defendants knew the statements were false when they made them.

**COUNT I – Violation of Exchange Act Section 10(b) and Rule 10b-5**
*(Against McLaughlin, Kapoor, Coral DeFi, and Coral Capital)*

46. Plaintiffs repeat and reallege paragraphs 1 through 45, as if fully set forth herein.

47. From the bachelor party to when the investment was realized, McLaughlin, Kapoor, Coral DeFi, and Coral Capital made various false statements of material fact in connection with the purchase of securities and/or omitted information necessary to keep the statements made from being misleading, as alleged herein.

48. McLaughlin, Kapoor, Coral DeFi, and Coral Capital acted with scienter, since they intended to deceive, manipulate, or defraud Plaintiffs and they knew or recklessly disregarded that their statements and omissions were materially false and misleading at the time they were made.

49. Plaintiffs relied on these material misstatements or omissions when they decided to invest in the cryptocurrency funds.

50. As a result of the wrongful conduct of McLaughlin, Kapoor, Coral DeFi, and Coral Capital, Plaintiffs suffered an actual realized economic loss.

51. Therefore, by virtue of the foregoing, McLaughlin, Kapoor, Coral DeFi, and Coral Capital violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

WHEREFORE, Plaintiffs demand judgment against Defendants Thomas McLaughlin, Neil Kapoor, Coral DeFi, and Coral Capital for damages, in an amount to be determined at trial, costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT II – Fraudulent Misrepresentation under Delaware Law**
*(Against McLaughlin, Kapoor, Coral DeFi, and Coral Capital)*

52. Plaintiffs repeat and reallege paragraphs 1 through 45, as if fully set forth herein.

53. From the bachelor party to when the investment was realized, McLaughlin, Kapoor, Coral DeFi, and Coral Capital made various false statements of material fact, as alleged herein.

54. When McLaughlin, Kapoor, Coral DeFi, and Coral Capital made the statements to Plaintiffs, they knew that the statements were false and/or made the statements knowing that they did not know whether the statements were true or false.

55. When McLaughlin, Kapoor, Coral DeFi, and Coral Capital made false statements, their intent was to induce Plaintiffs' reliance on the false statements.

56. Plaintiffs justifiably relied on the misrepresentations by investing in crypto funds.

57. Plaintiffs would not have invested in crypto funds if they had not been exposed to Defendants' misrepresentations.

58. As a direct and proximate result of Plaintiffs' reliance on these misrepresentations, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment against Defendants Thomas McLaughlin, Neil Kapoor, Coral DeFi, and Coral Capital for damages, in an amount to be determined at trial, costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT III – Negligent Misrepresentation under Delaware Law**
*(Against McLaughlin, Kapoor, Coral DeFi, and Coral Capital)*

59. Plaintiffs repeat and reallege paragraphs 1 through 45, as if fully set forth herein.

60. McLaughlin, Kapoor, Coral DeFi, and Coral Capital owed a duty to Plaintiff based on Plaintiff's potential investment interested in that information.

61. From the bachelor party to when the investment was realized, McLaughlin, Kapoor, Coral DeFi, and Coral Capital made various false statements of material fact, as alleged herein.

62. McLaughlin, Kapoor, Coral DeFi, and Coral Capital failed to exercise reasonable care in communicating to the Plaintiffs.

63. As a direct and proximate result of Plaintiffs' reliance on these misrepresentations, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs demand judgment against Defendants Thomas McLaughlin, Neil Kapoor, Coral DeFi, and Coral Capital for damages, in an amount to be determined at trial, costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**Count IV- Breach of Implied Covenant of good faith and fair dealing under Delaware Law**
(*Against Coral DeFi, Coral Capital, and DNA Holdings)*

64. Plaintiffs repeat and reallege paragraphs 1 through 45, as if fully set forth herein.

65. Plaintiffs invested into funds controlled by Coral DeFi, Coral Capital, and later by DNA Holdings with the understanding that their monies would be invested under the three-fund strategy that was marketed to them.

66. This expectation was so fundamental that Plaintiffs did not feel that it needed to be negotiated into the investment contract as it was the basis for the investment, which induced Plaintiffs into investing.

67. As direct and proximate result of Coral DeFi, Coral Capital, and DNA Holdings' breach of implied covenant, Plaintiffs sustained damages including the 50 percent loss in their investment.

WHEREFORE, Plaintiffs demand judgment against Defendants, Coral DeFi, Coral Capital, and DNA Holdings for damages, in an amount to be determined at trial, costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**COUNT V – Unjust Enrichment under Delaware Law**
*(Against DNA Holdings)*

68. Plaintiffs repeat and reallege paragraphs 1 through 45, as if fully set forth herein.

69. DNA Holdings received a benefit of at least $1.5 million from fraudulently induced investments made by Plaintiffs, following its merger with Coral Capital.

70. DNA Holdings had knowledge of the benefit conferred on it by Plaintiffs.

71. DNA Holdings accepted and retained the benefit that Plaintiffs conferred on it.

72. DNA Holdings has returned less than half the $1.5 million investment to Plaintiffs.

73. Because DNA Holdings obtained these funds as part of the violations of securities law alleged above, it is unjust to permit DNA Holdings to retain the benefit without compensating Plaintiffs for it.

WHEREFORE, Plaintiffs demand judgment against Defendant DNA Holdings Venture Inc. for damages, in an amount to be determined at trial, costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand trial by jury of all issues so triable.

Dated: August 31, 2026

Respectfully submitted,


| | |
|---|---|
| By: */s/Eduardo A. Maura*<br>Eduardo A. Maura, Esq. (pro hac vice)<br>Florida Bar No. 91303<br>eduardo@ayalalawpa.com<br>**Ayala Law, P.A.**<br>2490 Coral Way, Ste 401<br>Miami, FL 33145<br>P: (305) 570-2208<br>F: (305) 503-7206<br>*Counsel for Plaintiffs* | **A. BRITO LAW & CONSULTING, LLC**<br>**d/b/a BRITO.LEGAL**<br>1607 Ave. Ponce de León, St. GM6 #232<br>San Juan, Puerto Rico 00909<br>Tel: (787) 705-1011<br>Email: adrian@brito.legal<br><br>s/ Adrián Brito Rodríguez<br>**ADRIÁN BRITO RODRÍGUEZ, ESQ.**<br>RUA No. 21,626 \| USDC/PR Bar No. 307304<br>*Counsel for Plaintiffs* |